Delivered February 24, 1891.

---

### The Texas Standard Oil Company v. John J. Hanlon.
#### No. 2913.

1. **Conflicting Testimony—Master and Servant.**—The plaintiff sued for personal injuries suffered by his coming in contact with dangerous and exposed machinery in a dark room. Defense was want of proper care by the employe. The evidence with regard to the knowledge by plaintiff of the danger, and with regard to his own negligence, was conflicting. The testimony for the plaintiff, if believed, was sufficient to sustain the verdict for him. *Held,* in such conflict the verdict will not be set aside as against the evidence. So also will the verdict conclude special matters submitted as a defense if found to be true.

2. **Practice — Examination of Witnesses.**—The manner of examining witnesses is greatly under control of the trial judge. The counsel for plaintiff in cross-examination asked a witness a number of questions calculated to affect his credibility, and as if laying a predicate to impeach the witness. Upon objection some were withdrawn. No further effort was made to impeach. *Held,* that the action of the trial judge will not be revised, and the matter is no ground for reversal.

3. **Argument of Counsel.**—When counsel uses improper argument and objection is made and sustained by the court, upon which the counsel retracts the statements, it will rarely be ground for reversal. See example.

4. **Verdict.**—See facts supporting a verdict for $9000 damages for personal injury.

APPEAL from Galveston. Tried below before Hon. W. H. Stewart. The opinion contains a statement.

*Finlay & Finlay,* for appellant.— 1. The court erred in overruling defendant's motion for a new trial on the grounds set forth in the first paragraph of said motion. [See opinion.] Thayer v. Railway, 22 Ind., 26; Railway v. Sentmeyer, 92 Pa. St., 276; Coal Co. v. Hayes, 15 Am. St. Rep., 680; Gibson v. Railway, 63 N. Y., 449; Wright v. Rawson, 52 Ia., 329; Pfeiffer v. Ringley, 12 Daily, 437; Cool. on Torts, 551; Beach on Con. Neg., 94, 139.

2. An employe assumes all risks of his business that are seen or apparent or that could have been seen or known by the use of ordinary care and diligence. Rogers v. Railway, 76 Texas, 503; Railway v. Hester, 64 Texas, 401; Railway v. Lempe, 59 Texas, 19; Railway v. Drew, 59 Texas, 10; Chicago v. Railway, 92 Am. Dec., 215 (note); McGlynn v. Brodie, 31 Cal., 376; Sanborn v. Railway, 35 Kans., 292; Schraeder v. Car Co., 56 Mich., 132; Wood's Mast. and Serv., secs. 326, 328, 351, 382, 414; Beach on Con. Neg., secs. 94, 139; Cool. on Torts, citing Hayden v. Mfg. Co., 29 Conn., 548–558.

3. An employe in an oil mill full of dangerous machinery, groping in a dark room, can not recover for an injury for falling on an unguarded shaft or dangerous conveyor, unless he was engaged in the duties of his employment or had business in said room in connection with his employment. Wright v. Rawson, 52 Ia., 329; Railway v. Sentmeyer, 92 Pa. St., 276; Doggett v. Railway, 34 Ia., 284; Gibson v. Railway, 63 N. Y., 449; Pfeiffer v. Ringley, 12 Daily, 437; Thayer v. Railway, 22 Ind., 26; Wood's Mast. and Serv., secs. 326 (notes), 328, 351, 382, 414; Beach on Con. Neg., secs. 94, 139; Cool. on Torts, 551.

4. The conduct of plaintiff's counsel in asking questions, ostensibly for the purpose of impeaching the witness, but really for the purpose of prejudicing the jury against the witness, with no intention of following up the impeachment by introducing evidence to contradict the witness, is so extraordinary, unparalleled, unfair, and prejudicial to a fair and impartial trial that it should not be permitted by the court, especially as such a course of conduct in the hands of powerful and influential coun-

sel would have the effect to utterly destroy and impeach the veracity of the witness and the very truth of his evidence. [See opinion.]

*Wheeler & Rhodes,* for appellee.— 1. It is the duty of the master to supply tools, appliances, and machinery reasonably fit for the purposes of the occupation, and for neglect of this duty he is liable to one who is injured in consequence. Deer. on Neg., sec. 198; Perry v. Ricketts, 55 Ill., 254; Quaid v. Cornwall, 13 Bush, 601; Railway v. Jackson, 55 Ill., 492; Buzzell v. Laconic Co., 48 Me., 113; Kain v. Smith, 25 Hun, 146; Fuller v. Jewett, 80 N. Y., 46.

The master is as liable for neglect to change an unsafe machine or appliance as if it had been originally defective. Deer. on Neg., sec. 148; Railway v. Fitzpatrick, 31 Ohio St., 497.

It is the master's duty, and not the servant's, to examine the machinery and see that it is safe, unless the machinery from which the servant receives injury is committed to the special care of the injured servant; and the employe has the right to presume that the master has done his duty and complied with the law. Deer. on Neg., sec. 198; Reber v. Tower, 11 Mo. App., 199; Muldowney v. Railway, 36 Ia., 462; Railway v. Gildersleeve, 33 Mich., 133.

In this case there was positive knowledge on the part of the president of the mill and the superintendent that there was great danger to be apprehended from this conveyer in its exposed and uncovered condition. It was not necessary that the master should have had positive knowledge if it was discoverable by the proper discharge of his duty. This is sufficient. Deer. on Neg., sec. 200; Speed v. Railway, 71 Mo., 303.

A master placing a young and inexperienced person at work in a dangerous position is bound to give him due caution and instruction. Deer. on Neg., sec. 197; Hill v. Gust, 55 Ind., 45; O'Connor v. Adams, 120 Mass., 427; 1 Thomp. on Neg., 295–298, 309, sec. 2; Elliott v. Pray, 10 Allen, 378.

"If by reasonable and ordinary care and prudence the master may know of a defect in the machinery he operates, it is his duty to be advised, and not needlessly expose his employes or servants to hazard, peril, or mutilation." 46 Mich., 163; Hayden v. Manf. Co., 29 Conn., 548; Holmes v. Clark, 7 Hurl. & N., 937; 2 Thomp. on Neg., 970 (sec. 2), 976 (sec. 6), 992 (sec. 12); Fairbank v. Haentzsche, 73 Ill., 237; Baxter v. Roberts, 44 Cal., 187–192.

2. An employe does not assume the risk of injury from the machinery of the business in which he is engaged, so concealed by its being imbedded in the floor of the building as not to be easily seen, unless his attention has been especially called to it. Especially is this so if the machinery is needlessly in a dangerous condition, the attention of the master having been called to its condition and the danger to be apprehended having

been pointed out to him before the accident, when by the use of care by the master such machinery could be made reasonably safe and accident therefrom securely guarded against, it being the duty of the master to take reasonable precautions to prevent accidents to his servants.    Wood's Mast. and Serv., secs. 329–334, 349, 354; McGowan v. La Plata Co., 3 McCrary C. C. R., 393; Avilla v. Nash, 117 Mass., 318; Elliott v. Pray, 10 Allen, 398.

3. . A servant is not necessarily guilty of contributory negligence because he attempts to pass through a room where dangerous machinery is uncovered, even though the servant knew of the condition of the machinery (which is denied in this case), it being established, as in this case, that the master was clearly guilty of negligence in leaving uncovered the conveyor into which Hanlon stepped, although repeatedly warned that it was dangerous to life and limb in that condition, and in running it, open and exposed, idly and unnecessarily, as it was not in use; for the master and servant do not stand on the same footing in this regard.    It is the master's duty to provide safe instrumentalities for the use of his servants.    He is bound to exercise reasonable diligence in informing himself as to whether his machinery is as safe as it can be made.    The servant, in the absence of notice to the contrary, has a right to assume that his master has done his duty in this regard.    Wuotilla v. Lumber Co., 37 Minn., 153; 5 Am. St. Rep., 832; Russell v. Railway, 32 Minn., 230; Cook v. Railway, 34 Minn., 45; Faren v. Sellers, 4 Am. St. Rep., 256.

HENRY, ASSOCIATE JUSTICE.—The plaintiff was employed by the defendant to work in its "press room."

In another room, called the "seed room," the defendant operated a piece of machinery called a "conveyer," which was located in the floor of the seed room, and was a shaft with flanges, which was worked by steam and when in operation revolved with great power and velocity.    It was situated very near one wall of the building, where there was an open door used for the purpose of unloading cotton seed from the cars into the room, but which was not intended to be used for the entrance of persons, though there was evidence that the men engaged about the mill sometimes used it as an entrance.

The conveyor opposite the door was left uncovered and exposed.    The evidence shows that it could have been covered and made safe.    It was running idle on the night of the injury to plaintiff, which was unnecessary, as it could be easily stopped by casting off the belt without interfering with the movement of the other parts of the machinery.

On the night of his injury, the plaintiff having occasion to leave the building temporarily, on his return found it convenient to enter through the open door above referred to, which was without steps and was elevated some three or four feet above the ground.    Plaintiff, in entering

the door, stepped into the "conveyer" and one of his legs was so badly torn and crushed as to make necessary its amputation below his knee.

Upon the verdict of a jury judgment was rendered in favor of the plaintiff for $9000.

Appellant's first assignment of error is that "The court erred in overruling defendant's motion for a new trial on the grounds set forth in the first paragraph of said motion, which is as follows: ' Because the verdict of the jury is contrary to the law and the evidence, in this: The testimony for the plaintiff shows that he was the proximate cause of his injury in entering a dark, unlighted room by a door four feet high from the ground, with no steps for entrance, and used exclusively for unloading cotton seed from railroad cars, at the same time having full knowledge of the existence, location, and danger of the conveyer in which he was injured.' "

The evidence with regard to the knowledge of the danger by plaintiff and with regard to his own negligence was conflicting; and while we are not prepared to say the verdict of the jury was in accordance with its weight, it is sufficiently supported to make it improper for us to vacate the judgment on the ground that the court below should have set the verdict aside because it was unsupported by the evidence.

The evidence introduced by the plaintiff was amply sufficient to sustain the verdict if the jury gave credit to it rather than to that introduced by the defendant.

It was peculiarly the province of the jury to judge of the credibility of the witnesses, as has been often declared by this court.

At the request of the defendant the court gave to the jury a number of special charges, substantially directing them to find for the defendant if they should believe from the evidence that plaintiff had no business in the room where he was injured; that his injury was caused by his entering a dark room; and if he knew of the existence and situation of the conveyor or could have known of it by the exercise of ordinary care.

It is insisted by the appellant that the verdict of the jury was contrary to said charges, and that the court should have granted its motion for a new trial upon that ground.

As these assignments relate to the sufficiency of the evidence they must be disposed of by what we have said with regard to the first assignment.

Appellant's ninth assignment of error reads as follows: "This case ought to be reversed on account of the misconduct of plaintiff's counsel in the cross-examination of defendant's witness George Bedart, in asking the said Bedart the five questions set out in defendant's bill of exceptions No. 2, because said questions were asked for the purpose of discrediting said Bedart's evidence in reference to Hanlon's knowledge of the existence of the conveyer where he was hurt, and without any intention on the part of plaintiff's counsel to follow up the impeachment of said Bedart by the

introduction of evidence to sustain the matters inquired about in said five questions, which said misconduct prejudiced the jury against defendant and prevented it from having a fair and impartial trial."

The bill of exceptions referred to reads as follows:

"Be it remembered that on the trial of this case the plaintiff's counsel propounded the following questions to Geo. Bedart, a witness for defendant, on cross-examination:

"1.  Question.  I will ask you whether or not shortly after Hanlon came out of the hospital, and while in the cake room of the mill, you were present at a conversation in which Hanlon asked you how you came to say to Mr. Heidenheimer you had notified him, Hanlon, about the danger and to keep out of the mill, and you replied you had not so told Mr. Heidenheimer?  Do you remember a conversation of that sort?

"Defendant's counsel objected to the question, and the court overruled the objection, to which ruling defendant excepted.

"2.  Question.  Do you remember a conversation between Louis Evers and yourself shortly after the accident in the mill room in which you stated to Louis Evers the boy was not to blame, and this conveyer should have been covered, and it would be put on you, and Evers stated to you that you could not swear the boy was in there, and you answered you did not know what you would swear to before you got through with this case?

"The plaintiff, on defendant's objection, withdrew the question, and defendant excepts to the question, because, notwithstanding its withdrawal, it has had its effect.

"3.  Question.  Do you remember a conversation between Louis Evers and yourself shortly after the accident in the mill room in which you stated to Louis Evers the boy was not to blame, and this conveyer should have been covered, and it would be put on you, and Evers stated to you that you could not swear the boy was in there, and you answered you did not know what you would swear to before you got through with this case?

"The plaintiff, on defendant's objection, withdraws the first part of the question and will ask the balance.  The defendant objects, notwithstanding the withdrawal of the question, because it has had its effect.

"4.  Question.  In a conversation between yourself and Louis Evers shortly after the accident in the mill room, did you or not state to Evers that you could not swear that the boy was in there?

"Defendant objects to this question because the witness has already answered this in the direct and cross-examination.  Objection overruled, and defendant excepts.

"5.  Question.  In this conversation—a conversation shortly after the accident in the mill between Louis Evers and yourself when you were talking about this case—did you or not say you did not know what you would swear to before you got through with this case?

"To all of which questions the witness George Bedart answered in the negative.

"The defendant's counsel objected to the question and the plaintiff withdrew it.

"And to all of which questions the defendant's counsel objected, on the ground that they were irrelevant and not pertinent to any issue made by the pleadings or any testimony given by the said Bedart, and because they were calculated to prejudice the jury, the said plaintiff's counsel not thereafter having introduced any evidence to contradict the said Bedart in reference to any fact contained in said questions, or otherwise pursued any course of examination of the parties named in said questions with a view of impeaching the testimony of the said Bedart."

We think that such matters as are here complained of must be left to the discretion of the trial court.

If the party asking such questions either withdraws them on objection without an answer or when answered brings no evidence to contradict the witness or impair the force of the evidence, we can not believe that with the advantage of argument of counsel to the jury there can be such ground to apprehend that the verdict has been influenced by the questions propounded rather than by the answers of the witness as to make it proper to reverse the judgment by this court on account of such proceedings.

Appellant contends that "the verdict ought to be set aside on account of the improper conduct and remarks of the counsel of plaintiff in addressing the jury, wherein he said, in commenting on the evidence of Louis Seinsheimer, 'Gentlemen of the jury, will you believe this little Israelite?' it being well known to the court and jury that said Louis Seinsheimer and defendant's witness Samson Heidenheimer, the president of defentant's company, were Jews, because the same was calculated to prejudice the jury against defendant and its case."

The words were objected to at the time and the objection was sustained, whereupon the plaintiff's counsel withdrew the language.

This action was, we think, a sufficient admonition to the jury in this instance that they should not suffer themselves to be unfavorably influenced towards the defendant's case by the words objected to.

There may arise cases when such action will not be considered a sufficient remedy. We do not think, however, that this one belongs to that class, and we do not think that it would have been proper to have reversed the judgment if the objection had not been sustained nor the words withdrawn.

We are not able to conclude that the verdict is so excessive in amount as to make it proper for us to set it aside for that cause.

The judgment is affirmed.

*Affirmed.*

Delivered February 24, 1891.