W. H. BOWERMAN v. R. C. POPE ET AL.

Decided January 26, 1901.

**1.—State School Land—Purchase—Appraisement Necessary.**

An offer of $1.50 per acre for a tract of State school land appraised at $2 per acre is insufficient, and does not authorize an award of the land by the General Land Commissioner.

**2.—Same—Reappraisement—Approval.**

Where the Commissioner of the General Land Office approved a reappraisement at $1 per acre of all State school lands in a certain county "which appeared on the market," this did not constitute a reappraisement of a section of such land, a sale of which had been awarded by the Commissioner two days before, although such sale proved invalid because of defects in the application to purchase.

**3.—Same—Appraised Value.**

An application to purchase, at $1.50 per acre, school land which had been appraised at $2 per acre, is not made valid by the fact that it appeared on the books of the General Land Office without appraisement, and that it was "understood" that lands which were unappraised was on the market at $1.50 per acre, the minimum price fixed in the statute for land of that class.

**4.—Same—Forging Date of Application—Issue for Jury.**

Where, in a contest as to priority of right in the purchase of State school lands, there was an issue, with conflicting evidence, as to whether the date of plaintiff's application (the older one in point of time) was a forgery or not, it was error for the court to peremptorily instruct a verdict for defendant, instead of submitting that issue to the jury.

Appeal from Hall. Tried below before Hon. G. A. Brown.

*J. K. Duke* and *W. M. Pardue,* for appellant.

*H. E. Hoover* and *Plemmons & Veale,* for appellees.

CONNER, CHIEF JUSTICE.—This is a contest between adverse claimants of section 108, block 2, of public free school lands in Hall County,

surveyed by the Texas & Pacific Railway Company. Each party claims said section as "additional" land to his home section; appellant claiming ing the east one-half of section 100 as his home or base section. Appellant claims his said home section under two applications to purchase, one of date August 20, 1897, and one bearing date September 3, 1897. On the latter date appellant also appears to have made application to purchase section 108 in controversy. Appellee Pope claims section 108 as assignee of one J. R. Gracey, and also by virtue of an application to purchase the same by him made on November 22, 1899. The east one-half of section 100 and section 108 were awarded to appellant, who was plaintiff below. After the introduction of the evidence, the court charged the jury that "in this case you will find and say by your verdict that the plaintiff take nothing by this suit." The verdict was so returned, and from the judgment in appellees' favor this appeal has been prosecuted.

In illustrating the conclusion reached by us, it will not be necessary to consider the assignments in their order, nor, indeed, to state all of the facts. We think it sufficient to say that, while appellants' title to his home section appears to be insufficient in so far as dependent on his application of August 20, 1897, he nevertheless shows application, affidavit, obligation, and payment in regular form, bearing date September 3, 1897, which is prior in point of time to the proceedings under which appellees claim. It is insisted that the evidence shows this latter date to be a forgery, the true date being erased. The evidence on this issue was sharply conflicting, and the issue was evidently one for the jury.

Appellant's application to purchase the east one-half section 100 on August 20th was insufficient, in that the evidence shows that this section had been appraised at $2 per acre October 29, 1887, and we think it clear no reappraisement was ever shown to have been made prior to the date of this application. This application, the obligation, and payment were made on the basis of $1.50 per acre. An offer of $1.50 per acre for land appraised at $2 per acre is insufficient, and did not authorize an award. See Gracy v. Hendrix, 93 Texas, 26. The fact that on August 23, 1897, the Commissioner of the General Land Office approved the recommendation of the commissioners and county judge of Hall County classifying the lands described in the list attached to the recommendation as dry grazing lands, and appraising them at the price of $1 per acre, can not be held to be a reappraisement of section 100. The award under the application of August 20th, was made to appellant on August 21, 1897, and said approval of the Commissioner of the General Land Office was adopted only "on all of such lands as appeared on the market." The east one-half of section 100 having been sold on the 21st, as stated, it therefore did not "appear on the market;" the Commissioner having notified the county clerk of Hall County, August 21, 1897, of the award to appellant, and directing said county clerk to insert the name of the purchaser and the date of the sale on the list of unsold land for that county. Nor is the invalidity of appellant's application of August 20th remedied by the fact that section 100 then appeared upon the books of the land of-

fice without appraisement, and that it was "understood" that all land so appearing on the books without appraisement was on the market at $1.50 per acre, in accordance with the minimum price fixed for dry agricultural land by the act taking effect August 20, 1897. Section 100, having been duly appraised at $2 per acre, remained on the market at that price until a reappraisement had been duly made. No such effect can be given the act of the Legislature mentioned, nor an indefinite understanding, by whomsoever entertained. It follows that peremptory charge of the court was correct, so far as it related to the title claimed by appellant under said application of August 20, 1897.

While it is not very clear from the record that appellant's home section has in fact ever been reclassified or reappraised, there appears in the record a certificate of the Commissioner of the General Land Office to the effect that section 100 remains upon the books of that office under the classification of dry grazing land, and appraised at $1 per acre, and that such classification and appraisement is in effect in that office. This, together with the fact that appellant was awarded the land here mentioned under his application bearing date September 3, 1897, tends to show a reappraisement. If this be true, and if appellant's subsequent application to purchase the east one-half of section 100 and section 108 in controversy is prior in time to that of appellees' application, he would be entitled to recover, other essentials concurring. In this condition of the record the issue of forgery appears probably material, and therefore should not have been taken away from the jury by the instruction of the court. Other questions need not be considered, but for the error indicated in the peremptory instruction the judgment is reversed, and cause remanded for a new trial.

*Reversed and remanded.*

### ON REHEARING.

We think appellees have misconstrued our original opinion. We did not find as a fact that the east one-half of section 100 had been reclassified and placed on the market after its original classification and appraisement in 1887, or that appellant acquired title by virtue of his application of date September 3, 1897. We merely adverted to circumstances shown by the record tending to this conclusion, which, in our judgment, rendered it improper for the court to take the case from the jury. We supposed also this case easily distinguishable from the cases of Willoughby v. Townsend, 93 Texas, 80, and Coats v. Bush, 23 Texas Civil Appeals, 139. In the Townsend case it affirmatively appeared that there had been a former sale, and a judicial forfeiture. The former sale had the effect of withdrawing the land from the market, and the court, construing sections 2, 6 and 9 of the Act of 1895, held that Townsend, who was the plaintiff in the action, showed no right of recovery by virtue of application, which had been rejected by the Commissioner,

made after the forfeiture and before the land had been again put on the market in the manner directed in said section 6. The court, inter alia, said that section 2 empowered the Commissioner to make such regulation as had been adopted in that case, and it hence followed that the act of the Commissioner in rejecting the application under consideration was sustained. In the case of Coats v. Bush the point is not directly involved, for we there held that the evidence was sufficient to establish that the Commissioner had reappraised the land and notified the clerk.

In the case now before us, however, the land was duly appraised and classified in 1887, no former sale and forfeiture appearing; both parties hereto made application to purchase; the Commissioner has twice awarded the land to appellant; his purchase has been treated as valid by the officers of the State in the receipt of his obligations and payments of principal and interest; reappraisement at $1 per acre appears on the books of the General Land Office, as stated in the original opinion; and hence, under the circumstances of the case, we were and are now unwilling to hold that as a matter of law the land involved has not been reappraised and was not on the market at the time of the second award to appellant. See Scott v. Blackburn, 47 S. W. Rep., 480.

The motion for rehearing is overruled.

*Overruled.*