### W. T. STEWARD v. S. L. WAGLEY.

Decided April 12, 1902.

**State School Land—Purchase—Application—Change of Price.**

Where defendant made application to purchase State school land at $1 per acre at a time when it was appraised at $2 per acre, and the appraisal was changed to $1 per acre, and thereafter the land was awarded by the Commissioner to defendant on his still pending application, such award was valid, no superior intervening rights having attached, and the land was no longer on the market. Gracey v. Hendrix, 93 Texas, 26, criticised, and Hazlewood v. Rogan, 95 Texas, 295, followed.

Appeal from Briscoe.   Tried below before Hon. H. H. Wallace.

*W. M. Pardue* and *John W. Wray,* for appellant.

*Wilson & Kinder, D. B. Hill,* and *Wm. J. Berne, Jr.,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—June 23, 1898, appellant, an actual settler, made application to purchase as dry grazing land at $1 per acre the section of school land in controversy, complying in all respects with the law providing for the sale of such lands. The application was rejected because of a previous sale to appellee. Suit was consequently instituted by appellant to recover the land, which resulted in a verdict and judgment against him, from which this appeal is prosecuted.

The court held that if the land was on the market at all when appellant made his application it was on the market at $2 per acre, and inasmuch as he had only offered $1 per acre, instructed a verdict against him.

This section of land, with numerous others in Briscoe County, was originally classified as dry grazing and appraised at $2 per acre. It was reclassified September 27, 1891, and placed on the market as dry agricultural land, but at the same price. The authority of the Land Commissioner to make this change, however, is denied in the briefs for both parties. September 30, 1897, on petition of 110 resident citizens, stating that all the public free school land in Briscoe County classified

as agricultural land had been erroneously classified, the Land Commissioner changed the classification of all such lands, including, it seems, the section in controversy, to dry grazing and the appraisement to $1 per acre, and sent the following letter to the county clerk of that county:

"Sept. 30, 1897.—County Clerk Briscoe Co., Silverton, Texas: Dear Sir.—This is to inform you that I have this day changed the classification of all the remaining unsold school lands in your county heretofore classified as "agricultural," to grazing, and valued the same at the minimum price for such lands under the law, viz., $1 per acre, and you are hereby officially instructed to make corresponding changes on your record of classification and appraisement, holding this letter on file as your official authority for such changes. You will please acknowledge receipt and compliance with request herein. Very respectfully, Andrew J. Baker, Commissioner."

But it is claimed that the land in controversy had already been sold (August 21, 1897) to appellee as dry grazing land at $1 per acre, and consequently that it was not on the market at the price offered by appellant when he applied to purchase it. It may be conceded that the above quoted letter of the Land Commissioner, read in the light of his own official acts, did not place upon the market land then treated by him as already sold to another; for it probably had reference only to the "remaining unsold school lands" as shown by the records of his office. Bowerman v. Pope, 61 S. W. Rep., 330. We are thus brought to the inquiry, was the proof such as to warrant the court in assuming that at the date of the Land Commissioner's letter (September 30, 1897) placing the "remaining unsold school lands" in Briscoe County on the market at $1 per acre the records of his office showed a sale to appellee of the section in dispute?

As soon as this letter was received the county clerk of Briscoe County proceeded to make up a new classification and appraisement record of all unsold school lands in that county, and entered the section in question in this new record as dry grazing land at $1 per acre, thus treating it as unsold. The first notice he had of any sale to appellee was received from the General Land Office November 6, 1897, and was dated November 2, 1897. This notice stated that the land had been awarded to S. L. Wagley as dry grazing land at $1 per acre, August 21, 1897. A certificate from the General Land Office, dated October 9, 1900, was read in evidence, to the effect that the records of that office showed that the section in controversy had been classified as dry grazing land and appraised at $1 per acre under the Act of 1895, and that this classification and appraisement had never been changed. The classification and appraisement referred to in this certificate must have been the classification and appraisement made September 30, 1897, upon the petition of the 110 resident citizens of Briscoe County. Indorsed on the application of appellant was the following: "Received 6-26, 1898. Sold to S. L. Wagley 8-21-97 as additional land. Wagley is this day advised of proof of nonsettlement on his home section 7-1-98. B."

This evidence may have tended to show a sale or award to appellee on August 21, 1897, but did it conclusively do so? We think not. No certified copy or other direct proof of the entry or other record in the Land Office of the sale to appellee was produced on the trial, and no reason is suggested by the record why this was not done, unless it be that such proof would have been unfavorable to appellee. So far from conclusively showing an award to appellee prior to September 30, 1897, the evidence tended rather to show that the award had really been made after that time, about November 2, 1897, when notice thereof was sent to the county clerk, though the sale was thenceforth treated in the General Land Office as having been made when the application to purchase was filed there—August 21, 1897, in accordance with the following provision of the law: "* * * the sale shall be deemed and held effective from the date the affidavit and obligation are filed in the General Land Office." Rev. Stats., art. 4218j.

If, then, there had been no sale, either in substance or in form, to appellee when the "unsold school lands" were placed on the market by the above letter of September 30, 1897, the land in controversy was by that letter, and for the first time, placed on the market at $1 per acre, and as the Land Commissioner was not authorized to sell it to appellee at that price on an application previously made when the price was $2 per acre (as was decided by our Supreme Court in Hendrix v. Gracy, 51 Southwestern Reporter, 846), it must be held that the award to him afterwards did not take it off the market, but left it still subject to the application of appellant.

But on the other hand, if the award to appellee as shown by the records of the General Land Office had already been made when the letter of September 30, 1897, was written, the view taken by the trial court was correct. We have no doubt the case will be more fully developed on the next trial.

For the error above indicated, the judgment is reversed and the cause remanded for a new trial.

### ON MOTION FOR REHEARING.

The opinion of the Supreme Court in the late important case of Hazlewood v. Rogan, 67 Southwestern Reporter, 80, seems to require a modification of our opinion in this case.

In the case of Hendrix v. Gracey, 50 Southwestern Reporter, 137, it was held by this court that the application of Hendrix to purchase as an actual settler the section of land involved in that contention at $1.50 per acre, though filed when the price was $2 per acre, entitled him to an award without making a new application when the price was reduced to $1 per acre. Inasmuch as he was clearly an actual settler and his application to purchase at $1.50 per acre was still pending and insisted upon, notwithstanding the reduction of the price to $1 per acre, no right of Gracey or any other applicant having intervened, we treated

his application as being in substantial compliance with the law providing for the sale of school lands to actual settlers. But on writ of error the Supreme Court overruled this view, and held that inasmuch as the application of Hendrix did not comply with the law at the very time when it was filed in the General Land Office it was void, and no right to the land attached under it when the price was so reduced as to be covered by it, although "Gracey may not have acquired any legal right himself," assigning as the reason for this ruling, "because the law is not so written." The strict and literal interpretation thus given this statute seems, however, to have been, in some respects at least, materially modified, if not rejected, in the case of Hazlewood v. Rogan above referred to, in which it is held that an application made to purchase school land as additional land by one entitled to purchase additional land, although filed before the land is on the market, will support an award made after the land is on the market if such award be made before any superior intervening rights have attached. Such is our understanding of the opinion of the learned Chief Justice in that case, which, as already seen, accords with the view originally expressed by us in Hendrix v. Gracey. It is insisted in the argument of counsel for the motion that the "test adopted (by the Supreme Court) in the Gracey case can not be harmonized either with the test or the reasoning in the Hazlewood case," and it is difficult for us to see how the application can be treated as absolutely void in the one case because prematurely filed, and good enough for a valid award in the other although prematurely filed; but this we leave to the Supreme Court to settle. There is, however, this difference between the facts of the Hendrix-Gracey case on the one hand and the Hazlewood-Rogan case and the case at bar on the other: In the former no award was made to Hendrix, while in each of the latter awards were made, though upon applications prematurely filed.

We have concluded, therefore, to modify the original opinion in this case by withdrawing the following: "and as the Land Commissioner was not authorized to sell it to appellee at that price on an application previously made when the price was $2 per acre (as was decided by our Supreme Court in Hendrix v. Gracey, 51 Southwestern Reporter, 846), it must be held that the award to him afterwards did not take it off the market, but left it still subject to the application of appellant."

In lieu of what is thus withdrawn we now hold, on the authority of Hazlewood v. Rogan, that if the land in controversy was awarded to Wagley as additional land after the price was reduced, though upon an application previously filed, Steward, who was plaintiff below and whose application was undoubtedly subsequent to the award to Wagley, was not entitled to recover, because he not only failed to prove, as was incumbent upon him, that Wagley was not entitled to the award, but offered no evidence on that subject. Reeves v. Smith, 58 S. W. Rep., 185, and several other cases. In the contingency, then, of an award to Wagley after the price of the land was reduced, as well as in that of an award to him before, if shown, as is to be inferred, by the records of

the General Land Office when the Commissioner sent out the letter of September 30, 1897, appellant, whose application stood rejected, failed to show that the land was on the market at the price offered by him when he filed his application.

It follows from this conclusion that the court did not err in instructing a verdict against appellant, and that the motion should be granted and the judgment affirmed.

*Motion granted. Judgment affirmed.*

Writ of error refused.