#### CAMP et al. v. SMITH.

(Court of Civil Appeals of Texas. El Paso. March 19, 1914. Rehearing Denied April 23, 1914.)

1. DEEDS (§ 70*)—SETTING ASIDE—GROUNDS—FRAUDULENT REPRESENTATIONS.

Where the false representations of a vendor of school land purchased from the state, that the land had been classified as dry grazing land when purchased, so that the mineral rights were acquired, while a part of the land had been classified as mineral dry grazing land, whereby no title was secured to the minerals, were not a material inducement to the purchaser, and did not influence him in purchasing the entire land, the representations did not justify the setting aside of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 165–182; Dec. Dig. § 70.*]

2. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

A verdict on conflicting evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

3. DEEDS (§ 69*)—SETTING ASIDE—GROUNDS—MUTUAL MISTAKE.

Where the mutual mistake of a vendor and purchaser did not constitute a material inducement to the purchase, the mistake did not justify the setting aside of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 156–164; Dec. Dig. § 69.*]

4. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—PURCHASE—TITLE ACQUIRED.

A purchase of school lands while Rev. St. 1895, § 4218j, prescribing the requisites of an application to purchase, was in force is not invalidated by any mere inaccuracy in describing the classification of the land which was mere surplusage, as the law then in force did not require any statement of classification; and the subsequent Acts 30th Leg. (1st Ex. Sess.) c. 20, § 6f, requiring the reservation of mineral rights, does not apply to the purchase.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Reeves County; S. J. Isaacs, Judge.

Action by J. B. Smith against A. L. Camp and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Buck & Starley, of Pecos, and A. L. Camp, of Ft. Worth, for appellants. Howard & De Armond, of Midland, Hudson & Canon, of Pecos, and J. B. Atkeson, of Artesia, N. M., for appellee.

HARPER, C. J. This suit was brought by appellee against appellants A. L. Camp and G. G. Nesbitt upon four vendor's lien notes for $1,313 each, and to foreclose the lien upon sections 14 and 15, and the E. ¼ of section 11, block 70, public school lands in Reeves county, Tex., and against Sallie Land Nesbitt, H. H. Lockett, trustee, Toyah Oil & Pipe Company, B. C. Girdley, trustee, et al., E. E. Kirby, the First National Bank of Las Cruces, N. M., Oscar Snow, trustee, and G. Engel, to bar any claim they might have in or to said lands.

Appellants Camp and Nesbitt answered separately, each by general denial, and specially by sworn plea of fraud and failure of consideration, and alleged in substance: That the said lands were school lands, purchased by the appellee, and that in the sale to them appellee had fraudulently represented said lands to have been classified, when he purchased them, as dry grazing, and that he had purchased said lands as dry grazing lands, and had thereby acquired the mineral rights thereon and thereto, and the appellants would acquire such mineral rights to said lands by purchase from him. That appellants were ignorant of the true classification of said lands, and relied upon such representations, and had no notice to the contrary until long after said sale, when it was discovered that the E. ¼ of section 11 was classified, when appellee purchased the same, as mineral dry grazing, and that thereby appellee had failed to secure any title thereto, or to the minerals thereon, if he secured the surface rights. That the purchase was as a whole, and that the lands were purchased for the mineral rights thereon, and that, without such mineral rights, they were not worth what appellee had paid for the same to the state, and that appellants would not have purchased any of said lands had they known that the same, or any part thereof, did not carry the mineral rights. That the purchase was as a whole, and asking a rescission of the contract, and, in the alternative, for a credit for the amount paid for said quarter of section 11. The other defendants either filed disclaimers or defaulted. The trial was had before a jury on May 16, 1913, and the court submitted the case on special issues. Appellee made motion to set aside the findings. The court overruled appellants' motion, and entered judgment for appellee for the entire debt and foreclosure of vendor's lien against appellants, and barring all the rights of the other defendants. Appellants filed motion for new trial, which being overruled, they appealed with appeal and supersedeas bond.

The case was submitted upon special is-

---

sues. Questions and answers are as follows:

"First. Did appellee make the representations at or prior to the date of the deed that all the lands were classified as dry grazing lands when he purchased? Answered: Yes.

"Second. If yes, did appellants rely thereon? Answered: No.

"Third. Was the E. ¼ of section 11 classified in the Land Office on April 1, 1907, as mineral dry grazing land? Answered: No.

"Fourth. Did appellants know at the date they accepted appellee's deed that said ¼ of section 11 was classified as mineral dry grazing in the Land Office at the time appellee purchased such tract from the state of Texas? Answered: No.

"Fifth. Was the land purchased as a whole or by the acre? Answered: By the acre."

Second assignment charges that the court erred in submitting the second question in the special issues to the jury, and rendering judgment thereon, because the uncontradicted evidence was that plaintiff represented to these defendants prior to the purchase of the lands that all of said lands were classified as dry grazing at the time he purchased same, and that thereby he secured the minerals, that the defendants believed said representations, and acted upon them, and would not have purchased the lands but for such representations, for the object in purchasing the lands was to secure the minerals, etc.

[1] The uncontradicted evidence is not as asserted by appellants in this assignment. The pleadings and evidence raise the issue as to whether or not the plaintiff's title from the state carried the minerals, and the controlling question in this case is: Did the fact that the E. ¼ of section 11, block 70, did not carry the mineral rights (as represented by appellee, so found by the jury) constitute a material inducement to appellants, and influence them (under all the facts and circumstances surrounding the transaction at the time of the trade, and having reference thereto) in purchasing the entire land? Culberson v. Blanchard, 79 Tex. 486, 15 S. W. 700. And question No. 2 in effect submitted this question to the jury, and they answered it in the negative, and the surrounding facts and circumstances strongly indicate that such finding is correct.

[2] The evidence was conflicting, at least, and, where it is, the verdict will not be set aside upon appeal. Texas Standard Cotton Oil Co. v. Hanlon, 79 Tex. 678, 15 S. W. 703.

The third assignment charges that the court erred in not disregarding answer to same; question is disposed of by what is said next above.

[3] The fourth and fifth assignments charge that the judgment is contrary to the law and evidence, because the uncontroverted evidence shows mutual mistake as to said E. ¼ of section 11 carrying the mineral rights. The court might have assumed or have charged that there was mutual mistake in this respect; but, if there was evidence to sustain the verdict of the jury that such mutual mistake did not constitute a material inducement to the purchase, as in this case, it would not be reason for setting aside the sale.

The seventh assignment charges that the court erred in not setting aside the answer to question No. 3 under the proposition that they are ambiguous and contradictory, etc.

As said above, it matters not how the land was classified, or what representations were made, or even if both parties were mutually mistaken as to the classification, the mineral rights, etc., if they did not constitute a material inducement to the purchase.

Since assignments 9 and 10 are addressed to the same matters, they are likewise overruled for the reasons given above.

[4] The eleventh assignment is as follows: "Because the verdict and judgment are contrary to the law and the evidence in this: The uncontradicted evidence is that plaintiff applied to buy E. ¼ of section 11 as dry grazing land, when same was classified as mineral land, and without any waiver of the mineral, and that his application and the award thereon were void, and he had no title to said tract when he conveyed same to the defendant, and thereby the consideration pro tanto failed to said notes, and the court should have allowed the $800 paid for said tract as a credit upon the notes sued upon, which was not done, and because there was a failure of consideration on said tract to extent of $800 and interest, even though plaintiff obtained the surface rights by his application, and said judgment does not allow same, but is for the full amount of said notes, and is excessive."

The uncontradicted evidence discloses that, at the date of the sale of this land to Smith by commission of the Land Office, it was classified on the records of the Land Office as mineral dry grazing. The application to purchase same by Smith stated that same was classified as dry grazing, and did not contain any waiver of the mineral rights. At the time this tract of land was purchased, the requisites of an application to purchase school land were controlled by article 4218j, Revised Statutes of 1895. In this article there is no requirement whatever that the classification of the land shall be stated, or that in applications to purchase mineral lands there should be any reservation of the mineral right to the state. The incorrect statement of the classification did not affect the validity of the sale, because there is nothing in the law requiring any statement with reference to the classification whatever to be made in the application to purchase or waiver of the mineral rights by the purchaser. Section 6f of the Acts of the 30th Legislature 1907, p. 495, cited and relied upon by Camp, did not become effective until August 16, 1907—several months after Smith purchased the land. Section 6f of this act is the first provision in the law that sales of land classified as mineral should have the

reservation stated in the application to purchase. If the land had been purchased subsequent to the passage of this act, then the authorities cited by appellant, viz.: Gracey v. Hendricks, 93 Tex. 26, 51 S. W. 846; Bowerman v. Pope, 25 Tex. Civ. App. 79, 61 S. W. 330, 75 S. W. 1093; Burnam v. Terrell, 97 Tex. 309, 78 S. W. 500—would be in point. In other words, the applications to purchase by Smith were in accordance with 4218j, Revised Statutes of 1895, and, since this law did not require the applications to specify the classification, and did not require any waiver of the mineral rights, the sale was valid; the mere inaccuracy in describing the classification was of no consequence, as it was surplusage, and, had it been omitted entirely, it would not have affected the sale. Section 6f, Acts of 1907, p. 495, relied upon by appellant, expressly requiring the reservation of the mineral rights, was not effective at the time Smith applied to purchase, and therefore the cases cited have no application.

For the reasons indicated, the assignments are overruled, and judgment affirmed.