### LAMBERT v. LANCASTER et al.*
### (No. 8972.)

(Court of Civil Appeals of Texas. Dallas. Feb. 9, 1924, Rehearing Denied March 8, 1924.)

1. **Trial** ⬤⟞232(2)—**Instruction relating to effect of answer to special interrogatory held not erroneous.**

An instruction, relating to a special issue submitted, that if the jury answered, " 'No' you need not answer further, but have your foreman sign the answer and return same into court as your verdict," construed according to everyday accepted meaning was not misleading, wrongfully suggestive of the answer "No," or wrongfully indicative that the court's mind was against the party unfavorably affected by such answer, but merely admonished the jury of the effect of such answer upon the rights of such party.

2. **Trial** ⬤⟞285—**Commonly accepted meaning applied in construing instruction.**

In construing the language of an instruction to determine whether error has been committed the everyday commonly accepted meaning must be applied, not a strained and unusual construction.

3. **Master and servant** ⬤⟞285(1)—**Evidence held to support jury's finding that employee not injured in manner claimed.**

In an action by a division road master of defendant railway to recover for injuries received in course of employment, evidence *held* to support special finding of jury that plaintiff did not receive the alleged injury while performing a detail of the work in co-operation with other servants.

4. **Appeal and error** ⬤⟞1001(1)—**Special verdict supported by some evidence not disturbed.**

Where there is ample evidence to sustain the answer of the jury to a special interrogatory, such answer is conclusive upon the court of appeals.

5. **Trial** ⬤⟞139(1), 140(1)—**Credibility of witnesses and weight of testimony for jury.**

Juries have the exclusive prerogative of passing on credibility of witnesses and weight of their testimony and of reconciling conflicts in the evidence.

6. **New trial** ⬤⟞97—**Failure to ask for continuance to secure available evidence held to preclude right to new trial.**

Where plaintiff prior to the trial secured written statements of several witnesses sustaining his position, who at the close of the trial testified for defendant, his failure to apply for leave to withdraw his announcement of ready and to continue the case to secure evidence known to be in existence, precluded his right to demand a new trial on the ground of surprise, especially where one of such witnesses six months before trial repudiated the statement attributed to him.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Action by J. F. Lambert against J. L. Lancaster and others, as receivers of the Texas & Pacific Railway Company. Judgment for defendants, and plaintiff appeals. Affirmed.

Randell & Randell, of Sherman, and Ocie Speer, of Fort Worth, for appellant.

George Thompson and R. S. Shapard, both of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellees.

VAUGHAN, J. Appellant filed his suit in the court below on the 17th day of December, 1921, against appellees as receivers of the Texas & Pacific Railway Company, a corporation, to recover damages in the sum of $40,000 on account of injuries claimed by appellant to have been sustained by him on the 12th day of July, 1920. The allegations of appellant's petition pertinent to the issues involved on this appeal are that appellant was in the employ of appellees in the capacity of division roadmaster on the line of railway operated by said receivers for the Texas & Pacific Railway Company between Paris, Lamar county, and Whitesboro, Grayson county, Tex.; that he received orders from the general roadmaster to assist the bridge and building department in laying drain pipes in Grayson county; that he and the section foreman and the section men of the Whitesboro section were engaged in assisting the bridge and building department; and that the superintendent of the work ordered appellant and the foreman and the section men and others engaged in the work to use a steam derrick to drive a certain tile by striking it with

another swinging tile, and directed appellant and another employé to each take a scantling, being a piece of timber about 2 inches thick and about 4 inches wide, and 8 or 10 feet long, and place it over the end of the tile which was to be struck; that appellant did as he was directed, and the men in charge and at work proceeded to drive the tile by striking the scantling which appellant held and the one which was held by another employé on the other side of the tile; that the agents, servants, and employés of appellees negligently and carelessly swung the swinging tile against the scantling held by appellant in such manner that same was struck to one side, striking the end of the scantling appellant was holding with great force and violence, causing the end he was holding to be suddenly thrown with great force and violence against his breast, lacerating, bruising, and shocking his whole body and all his vital organs, whereby appellant sustained serious, painful, and permanent injuries.

Appellees answered by general and special denial that appellant sustained the injuries as alleged in his petition; that appellant attempted to hold his scantling in the manner and for the purpose alleged in the petition; also properly pleaded assumed risk.

The cause was submitted to the jury on 18 special issues, of which only No. 1 was answered by the jury, to wit:

"Did the plaintiff J. F. Lambert on the occasion in question place a scantling over the end of the tile which was to be struck by another tile, and the employés that were there at work swing the swinging tile against the scantling causing it to strike plaintiff in the breast?"

To which the jury answered "No."

Therefore it will not be necessary to discuss the 17 unanswered issues, same not being pertinent to this appeal under the conclusion reached by us as to the disposition of same after carefully considering all the propositions on which this appeal is predicated, to wit:

"The answer of the jury to question No. 1 submitted by the court should be set aside, because the same is not supported by the evidence but is contrary to the overwhelming weight and great preponderance thereof, in this that the overwhelming weight and great preponderance of the evidence shows that on the occasion in question plaintiff did place a scantling over one end of the tile which was to be struck by another tile, and that the other employés doing the work did swing the swinging tile against the scantling, causing it to strike plaintiff in the breast.

"Question No. 1 submitted by the court is upon the weight of the evidence, is misleading, is wrongfully suggestive, and wrongfully indicates that the court's mind was against the plaintiff's cause of action, and wrongfully suggested that the jury should answer the same 'No,' for this, at the conclusion of said question, and in connection therewith, the court instructed the jury, 'If you answer question No. 1 "No," you need not answer further, but have your foreman sign the answer and return the same into court as your verdict,' the plaintiff having objected to said charge and question upon said grounds.

"The question propounded by counsel for plaintiff to the witness Arthur Marple on cross-examination, to wit, 'You were present when Rogers had J. F. Lambert and another man handling a 2x4 scantling between the tile, were you or not?' And, 'Now, about how long were those scantlings as you recollect—the best you recollect,' were not subject to the objection that the same called for the opinion and conclusion of the witness, and it was error for the court to sustain such objection to the first question and to sustain the objection to the second question that it assumed the witness had testified about the scantling when he had not.

"The question by counsel for defendant propounded to defendant's witness O. O. Crump, to wit, 'Now state whether or not, as far as you know, anybody was struck, or in any way injured there, as far as you know,' was subject to the plaintiff's objection that the same called for an opinion and conclusion of the witness, are argumentative, improper, and incompetent, and took the place of the jury, which objections were then and there made and overruled, and the witness answered, 'No, sir; I did not see any one hurt.'

"That portion of the statement of the witnesses A. Locke and Arthur Marple, offered in evidence by plaintiff, to wit, 'I consider this very careless work on Charley Rogers' part, being foreman of the work. I do know we were short of labor to do such work,' was not subject to the defendant's objections that the same was irrelevant, immaterial, hearsay, and prejudicial, which objections were made and sustained, and that portion of the statement excluded. This ruling of the court was error and prejudicial to the plaintiff.

"The trial court committed error in refusing to set aside the verdict and to grant a new trial because of the newly discovered testimony of the witnesses Staple, Nelson, and Massey, all bearing directly upon issue No. 1 submitted by the court, and all showing or tending to show that plaintiff, while holding a scantling against the tile being driven, was injured by the other employés, causing the swinging tile to strike such scantling out of place and injure plaintiff in the breast, as in said issue submitted."

[1] Appellant's proposition No. 2 assails special issue No. 1 as being upon the weight of the evidence, misleading, wrongfully suggestive, and wrongfully indicating that the court's mind was against appellant's cause of action; and, further, that same wrongfully suggested that the jury should answer same "No," on the ground that at the conclusion of said issue the court instructed the jury that, in the event said issue should be answered "No," it would not be necessary to answer the other issues submitted. The language objected to as containing the vice in the submission of said special issue No. 1 is as follows:

"If you answer question No. 1 'No,' you need not answer further, but have your foreman sign the answer, and return the same into court as your verdict."

In passing upon this proposition we must give the language employed its everyday, commonly excepted meaning, for in that way we must assume that the jury received, understood, and applied same. What was the impression to be conveyed by said language? It occurs to us on careful examination, this, and nothing more: (1) That the jury was admonished as to the effect its answer would have on the rights of appellant in the event the answer should be "No"; (2) that same would constitute the verdict of the jury upon which the judgment of the court would be pronounced, terminating the litigation adversely to appellant; (3) it in effect directed the minds of the jury to the consideration of the effect its answer "No" would have upon the ultimate rights of the appellant to recover. This theory is strengthened by the following language, forming a part of the submission of question No. 1 objected to: "If you answer question No. 1 'Yes,' you will proceed to answer following question No. 2," which clearly brought before the jury the effect answer "No" to question No. 1 would have upon the right of the jury to further consider the case along lines favorable to appellant, they being, in effect, told that, if they should answer question No. 1 "Yes," then they would proceed to further consider the case on the theory that, having answered "Yes," the appellant had established that he had received the injuries as alleged by him, and to further consider the case with reference to his right to recover on account thereof.

[2] In order to give the language objected to the force and effect contended for by appellant, we would have to place a strained and unusual construction upon the meaning of same, and, further, assume that the personnel of the jury trying the case was not possessed of ordinary intelligence so as to comprehend and apply language in common use and having an everyday, generally accepted meaning and within the power of the comprehension of the ordinary mind. This may be true in some isolated instances, but such exceptional cases are of such rare occurrence that courts must adhere to the sane and sensible rule of presumption indulged immemorial in favor of the reasonable intelligence of those called upon and selected to discharge the grave and important duty in the service of their country as a juror. Therefore we hold that the court's charge is not subject to the criticism urged by appellant, and overrule his assignment and proposition in reference thereto.

[3] By his proposition No. 1 appellant contends that the answer of the jury to question No. 1, supra, is not supported by the evidence, but is contrary to the overwhelming weight and great preponderance thereof, and therefore the court below erred in not granting his motion for a new trial. This will cause a review of the evidence in order to determine whether or not there was sufficient evidence before the jury upon which to predicate its answer to special issue No. 1.

As to the character of work that was being done, there being no controversy about it, instead of setting out in detail and at length the testimony, for brevity we make the following statement:

There was a bridge on the line of railroad where the work was being done across a ravine, or low place of some kind, which was to be replaced with a dump; that is, build a roadbed of dirt across the place where the bridge was. It was necessary to have a drain at this place for the water to pass through. The work that was being done at the time appellant claims to have been injured was putting in some 12 or 13 sections of large concrete tile, or drain pipe, about 12 feet long, 4 feet in diameter, with walls about 6 inches thick, weight about 7,200 pounds each. One end of the tile was small, and the other end had a bell, or large end, to it, and in placing the tile and fitting it up the small end of the tile was being put in and shoved up to fit and make the joint. The tile was being put in a ditch that was dug of sufficient width and depth for the tile. The joints of tile were put in position with a Brown hoist or derrick, and picked up with a cable on a boom about 40 feet long and moved directly over the ditch and let down into the ditch, and when in position it would be shoved into the bell or large end of the other tile so as to make a perfect joint. In doing the work there was one joint of the tile that did not go in by shoving it, and the method adopted to drive it in was to pick up another tile with the hoist and cable and swing it and strike the tile that would not go in, and drive it in.

As to what was done, and how the driving in of the tile that would not fit was done, is the point of controversy and conflict in the evidence.

Appellant in his own behalf testified:

"We were jointing drain tile; making an effort to joint one tile into the other. We would put a cable round the tile near the center, and pick it up with the derrick, and swing it 6 or 8 inches off the ground with the cable and the machine so as to place it and put it into the other tile. It failed to go in the bell. They turned the tile, and it failed to go in in any way we tried it. Mr. Rogers was sitting on the cap of the bridge, and gave the signal to the engineer. We took a couple of 2x4s, and held them to the end of that tile. Mr. Rogers, the bridge foreman, told us to use a couple of scantlings to keep from breaking the bell, to avoid breaking the bell off the concrete tile. I picked up a timber, and another man picked up another one, and we put them there to keep from bursting the bell. When I put it there they struck it, and when I looked around they were making another stroke, and it throwed the scantling I had against me, and it hit me in the chest or top of the breast, across the breast over the heart. The blow was about

level with my heart. It struck my chest above the heart and about the heart as well as I understand it. * * * The scantling was 2 inches thick and 4 inches broad. * * * It struck me and knocked me back, and knocked the breath out of me; it knocked me backwards; it staggered me back, and I went down on the ground and arose trying to get my breath, and just staggered around until I finally got my breath. It seemed to knock all the breath out of me. It seemed I was not going to get my breath. I tried to get my breath as quick as I could get up. There was a red place where the scantling hit me; there was a bruise there; it was a red place and bruise and it was sore. When I first noticed it at night it was a red place there; the next day I noticed it, and it was turning dark. It showed a bruise there something like 20 or 30 days. I guess my wife was the first person that saw it. She was at Bonham. I stayed Monday night at Whitesboro, and I saw my wife Tuesday night."

Mrs. J. F. Lambert, appellant's wife, testified in his behalf as follows:

"At the time plaintiff was injured we were living at Bonham, Tex. I was at home at the time he was hurt. He was hurt the fore part of the week, but I don't remember whether I could state the day or not. He was injured in the evening about 5 o'clock, and I saw him in the evening of the next day. I saw plaintiff spitting up blood when he came home. In 10 or 15 minutes after he got there he called for a cuspidor. I saw his breast that night, and I found a bruised place on it. I could not tell exactly how far that bruise was from the center of the breast, but I suppose it was near the center. From the center of the breast to the edge of the bruise was about an inch and a half I guess."

A. Locke, a witness for appellees, testified in part as follows:

"I helped to put in some tile under the railroad east of Sandborn in July, 1920. I know Mr. Lambert, the plaintiff. At the time we put in the tile the plaintiff was roadmaster for the defendant. My recollection is that during the time the tile were being put in there was one that did not fit in the shoulder, and we drove that tile in with another tile. We took a cross-tie and laid it across the ditch, and the tile we were using was strung to the cable, and we drove it that way. We used the cross-tie as a cushion to keep from damaging the tile. I did not see plaintiff taking any part in the work being done there. All the part I saw him take was superintending the work. I was helping to do the work of driving that tile in there. I had hold of the tile helping to drive it. When the tile was being driven in there no one was holding a scantling, a 2x4, against the tile. If the plaintiff held a scantling there I did not see it. I did not hear Mr. Lambert make complaint about having received an injury of any kind. I worked on the job of putting in that tile until it was finished."

C. C. McDonald, a witness for appellees, testified that he was working for appellees in July, 1920, as a carpenter in the bridge and building department; that he was present and helped to put in the tile in question un-

259 S.W.—18

der the track just east of Sandborn; that he continued with the work until it was finished; that the work was done with a derrick; that while the work was being done and the tile driven in he did not see any one use a 2x4 as a cushion, but that an ordinary cross-tie was used for such purpose; that he knew when the men got the cross-tie and put it in for a cushion; that he did not know of any one getting hurt, or claiming to have been hurt there.

To the same effect was the testimony given by Arthur Marple, O. O. Crump, and Charlie Rogers, witnesses for appellees.

[4] Applying well-established rules of law which we must recognize as being applicable to the proposition under discussion, we hold that same relates to the sufficiency of the evidence to sustain the verdict, and that, as the finding of the jury was not without evidence to support it, said proposition is without merit. Under a proper appraisal of the weight of the evidence the verdict is not found wanting in evidence sufficient to sustain it, and much less can it be found therefrom to be unjust; and, unless the verdict is manifestly unjust, or contrary to the evidence, we are not at liberty to disturb it. Shaw v. Garrison (Tex. Civ. App.) 174 S. W. 942. Furthermore, there being ample evidence to support the answer of the jury to special issue No. 1, same, as a verdict in this cause, is conclusive upon this court. Railway Co. v. Boleman (Tex. Civ. App.) 112 S. W. 807; Railway Co. v. Malone (Tex. Civ. App.) 126 S. W. 941.

[5] At best the evidence on the issue under discussion only reflects a serious conflict on the controlling issue in the case, which was resolved by the jury in favor of appellees, they being the judges of the facts proven. This called for the exercise of that prerogative conferred by law exclusively upon juries, to wit, to pass upon the credibility of witnesses and the weight to be given their testimony, and, where possible, to reconcile the conflict in the evidence in arriving at a conclusion from the evidence before them as a basis for their verdict. This clearly presents an attack on the verdict rendered on the ground that same was based on conflicting evidence.

The fact that the evidence was conflicting on which the verdict of a necessity must have been rendered does not clothe this court with the authority to disturb same and thereby assume the functions of a jury—we having discharged the authority conferred upon us in determining from the evidence that the verdict is neither manifestly unjust nor contrary to the evidence and that there is evidence to support the conclusion reached by the jury. Camp v. Smith (Tex. Civ. App.) 166 S. W. 23; Texas Standard Cotton Oil Co. v. Hanlon, 79 Tex. 678, 15 S. W. 703; Times Pub. Co. v. Rood (Tex. Civ. App.) 163 S. W. 1037.

[6] Appellant complains of the action of

the trial court in overruling his motion for a new trial, on the ground of alleged newly discovered evidence, which, it is contended by appellant, tends to show that he was holding a scantling against the tile being driven and was injured by the other employés causing a swinging tile to strike such scantling and injure appellant. in the breast. In his motion for a new trial and assignment appellant says that before the trial he secured written statements to the fact of his injury from Rogers, Locke, and Marple, who testified as witnesses for appellees on the trial of the case, and that he was not aware that the fact that he was struck by the scantling would be disputed by the appellees or by any witness until toward the close of the trial of the case, and "then it developed that the witnesses brought from various parts of the state were dodging the fact that they saw him hurt"; appellant's position being that he was surprised by the testimony of said witnesses Rogers, Locke, and Marple, who, on the trial, testified differently from the written statements claimed to have been secured from them by appellant before the trial.

The answer of appellees denied that appellant was struck with a scantling, so appellant was apprised by appellees' position, to wit, that they were contending with him as to every material allegation made by him, and would in all probability support such contention by evidence within the means of appellees to be produced on the trial of the issues involved in the case. The pleadings filed served notice on appellant to use all the diligence within his power to prepare to meet the controverted issues thus presented by the pleadings, he being called upon thereby to make good on the trial of the case if he expected to prevail by the introduction of evidence sufficient to establish his right to recover, and the failure to exercise due diligence on his part was at his peril. Hence it follows that, if in his attempt to anticipate what course appellees would pursue in the introduction of testimony his judgment was at fault, he should not thereafter be heard to say:

"I committed an error in the management or preparation of my case for trial; therefore, notwithstanding the court is not responsible for the position I am thus placed in, a new trial should be granted that, with the lights now before me, I may with more accuracy gauge the battle, and thus be better prepared for the contest."

On these matters appellant had his day in court, was not denied any right accorded him by law. but the risk he assumed to take and the results which flowed therefrom, as now contended by him, are matters for which he alone was responsible, and are not chargeable to any miscarriage of justice on the part of the trial court. If appellant was surprised on account of the change in the testimony of the witnesses Rogers, Locke, and Marple, made by them respectively on the trial of the case, he was not helpless, for, as in effect held by Mr. Justice Williams in the case of Gregory v. S. P. Ry. Co., 2 Tex. Civ. App. 279, 21 S. W. 417, when appellant discovered during the trial that said witnesses had deceived him by testifying contrary to the written statements made by them, respectively, he should have applied for leave. to withdraw his announcement and to continue the case in order that he might have an opportunity to secure the evidence known then, as shown by the proceedings on the motion for new trial to be in existence and obtainable by the exercise of due diligence at the next term of the trial court. But. certainly, having elected to proceed with the trial, being satisfied to take chances on the result of same, to sustain appellant's position would be but to permit him to trifle with solemn court proceedings, the toleration of which would be fraught with judicial disaster.

As to the witness Rogers, six months before the trial of the case he advised appellant by letter of date December 2, 1921, which was addressed to and received by appellant in due course of mail, that he repudiated the statement claimed by appellant to have been made by him to the effect that he was present when appellant received the injuries as claimed; further stating:

"I was not present when you claim injury occurred, and was not in charge of pipe laying as claimed in your letter. You will do me a great favor to kindly erase my name from your self-written statement."

Therefore appellant is not in position, as to the witness Rogers, to claim that he did not expect any witness to dispute that he received the injuries as alleged by him.

Even if appellant had relied on the written statements and had offered the witnesses named, and they had testified as they did in conflict with their respective written statements, and thereby appellant had been ever so much surprised, it would have been incumbent upon appellant to have availed himself of the proceedings herein suggested, and, failing to do so, he would not be in position to ask for a new trial on the ground of newly discovered evidence.

We do not think it necessary to prolong the discussion of this proposition. The principles of law involved being so thoroughly settled by the following authorities, it will only be necessary to apply same to the proper state of facts as in this instance. Bridges v. Williams, 28 Tex. Civ. App. 38, 66 S. W. 120, 484; Railway Co. v. Kingston, 30 Tex. Civ. App. 24, 68 S. W. 518; Gregory v. S. P. Ry. Co., supra.

We therefore. overrule said proposition and assignment on which it is based.

We have carefully considered the other propositions, and, finding no error revealed by same, and the questions of law presented

being so thoroughly settled by the decisions of this state that a discussion of same could not be of any interest to the bench or bar, we therefore overrule said propositions without further comment.

The conclusion reached on the several propositions leads to an affirmance of this case.

Affirmed.